SAMUEL P. HALE & others *vs.* CAROLINE HALE.
CAROLINE HALE *vs.* SAMUEL P. HALE & others.

The court of probate has power to make a second allowance to a widow out of the estate of her deceased husband, at any time before the personal estate is exhausted.

But after the widow has received the amount of the first allowance, and all the personal estate has been exhausted in the payment of debts and charges of administration, though within one year from the appointment of the administrator, no further allowance can be made to the widow, and no appeal can be taken by her, nor allowed on her petition, from the decree making the first allowance.

RALPH A. HALE died intestate on the 12th of December 1851, leaving no children; and an administrator of his estate was

appointed in the same month.   On the 9th of March 1852, an allowance of $300 was made by the probate court to Caroline Hale, his widow, and received by her of the administrator on the 4th of January 1853.   On the 20th of July 1852, she petitioned the probate court for an additional allowance, on the grounds that the former allowance was too small, under all the circumstances, and that the heirs at law intended to contest the right of her husband to more than one half of his real estate, thereby depriving her of dower to a large amount.   This petition was opposed by some of the heirs at law.   But the judge of probate, on the 8th of February 1853, decreed the widow an additional allowance of $300, from which decree the heirs at law appealed.

The amount of personal property, as appears by the inventory and the administrator's account, was $1,925.66, and the inventory of the real estate amounted to $9,050.   All the personal estate, except the amount of the first allowance to the widow, was exhausted in the payment of debts and charges of administration, before the filing of her petition for a second allowance. The debts remaining unpaid amount to $1200 or more, for the payment of which real estate must be sold.   The widow has no children, nor any one dependent upon her for support.

On the 5th of March 1853, the widow petitioned this court for leave to enter an appeal from the first allowance, representing that said allowance was made through the agency of the administrator, without her authority or knowledge ; " and that though she was informed thereof before the time expired in which she could claim an appeal therefrom, yet she was not informed as to her rights in the premises, and did not know that an appeal could be taken, and that it is without any default on her part that said appeal has not been claimed."

The appeal of the heirs at law from the second allowance, and the petition of the widow for leave to appeal from the first allowance, were submitted to this court upon a statement of facts and evidence, the material part of which is given above.

*C. P. Huntington,* for the widow.   The judge of probate had power to correct his former decree, and increase the amount of

the allowance, on being convinced that it was insufficient. This general principle was recognized in *St.* 1816, *c.* 95, § 1, and Rev. Sts. *c.* 68, § 26, expressly authorizing an additional allowance to the widow, when an estate, which has been represented insolvent, proves solvent. But if no second allowance can be made, the same object can be attained by granting the petition to enter an appeal from the first decree, under Rev. Sts. *c.* 83, § 39. 2. The allowance to the widow is preferred by statute before the debts of the deceased. Rev. Sts. *c.* 65, § 4; *c.* 66 § 14. *St.* 1838, *c.* 145, § 2. The policy of the legislature to secure the interests of the widow is also shown in *Sts.* 1805, *c.* 90, § 2; 1849, *c.* 87; 1854, *cc.* 406, 428. The rights of the widow could not be affected by the payment of debts by the administrator within one year from his appointment, which he had no right to do. Rev. Sts. *c.* 66, § 10; *c.* 67, § 7. 3. The amount of $600 was not an unreasonable allowance. *Washburn* v. *Hale,* 10 Pick. 431. *Crane* v. *Crane,* 17 Pick. 422. The intimation of the chief justice in *Adams* v. *Adams,* 10 Met. 171, that the allowance is limited to the temporary relief of the widow, has not been acted upon in subsequent cases before single judges of this court, and was overruled by the case of *Whiting* v. *Whiting,* Berkshire, 1847, in which the decree of the judge of probate, allowing $1,200 to the widow of General Whiting, who died intestate, leaving property of about $22,500 in value, was affirmed by the full court. 4. The receipt of the amount of the first allowance by the widow did not amount to an acquiescence in the first decree.

*D. Aiken,* for the heirs at law. The second allowance was improperly made. (1.) Because the *St.* of 1838, *c.* 145, authorizes an allowance only for " necessaries," that is, only for the temporary relief of the widow. *Adams* v. *Adams,* 10 Met. 170. This widow has already received $300, has no children, and has dower in the real estate. (2.) Because there was no personal property remaining at the time of the application, out of which an allowance could be made. (3.) Because the first allowance, not appealed from, was final and conclusive. 1 Greenl. Ev. § 550. *Mathes* v. *Bennett,* 1 Foster, 201. (4.) Because the receipt of

the first allowance by the widow was an affirmance of the decree on her part. This is also an answer to her petition for leave to enter an appeal from the first allowance; for by Rev. Sts. *c.* 83, § 44, this court may reverse or affirm, in whole or in part, the decree appealed from. How can the decree be affirmed in part, when the whole amount has been received by the widow? Besides; the only reason given, in her petition, for her omission to appeal at the proper time, is ignorance of the law, which is no excuse.

THOMAS, J. The power of the court of probate to make allowances to widows from the estates of their deceased husbands, is derived solely from the statute of 1838, *c.* 145. By the third section of this statute, the fourth, fifth and sixth sections of the sixty-fifth and the twenty-sixth section of the sixty-eighth chapter of the revised statutes are repealed, leaving no other statute in force upon the subject but the statute of 1838, *c.* 145.

The second section of that statute is as follows: " Such part of the personal estate of any person deceased as the judge of probate, having due regard to all the circumstances of the case, may see fit to allow for necessaries to his widow, for the use of herself and family under her care, if any, and also such provisions and other articles as shall be necessary for the reasonable sustenance of the family of any person deceased for forty days after his death, shall not be deemed and taken as assets to be applied to the payment of debts, legacies or charges of administration; but the same shall be allowed in the account of administration in discharge of so much of the inventory of the estate, when the same is contained therein, although it should thereby become necessary to sell real estate for the payment of debts, legacies or charges of administration, and although the estate may be insolvent."

A preliminary objection is made by the appellants, which is that the court of probate had no power to make a second allowance; but we think that since the repeal of the twenty-sixth section of the sixty-eighth chapter of the revised statutes, there is no implication even that a second allowance may not be made at any time before the personal estate is exhausted. It

44 *

often occurs that some allowance is necessary for the immediate relief of the widow and her family, and is made upon the return of the inventory, and yet that the judge of probate has not the requisite means of determining the extent of the allowance which the situation of the widow and her family, the value of the property left by the deceased, on the one hand, and the amount of his debts, on the other, may make reasonable.

But though such power exists in the judge of probate, and in this court upon appeal, it is very clear that in this case no further allowance can be made.

The husband died in December 1851, and an administrator was appointed in the same month.   On the 9th of March 1852, an allowance of $300 was made to the widow.   This allowance she received, claiming no appeal.   After such reception, indeed, no right of appeal was left.   Such appeal would have vacated the decree of the judge of probate, and there would have been no authority for the administrator to pay.   It would have been for this court to determine upon appeal whether any, and if so, what allowance was necessary.   Such allowance might be for a less sum than what was decreed in the court below, as well as for a greater.   It is clear therefore that her election to appeal must be made before the decree is carried into effect and the money paid.   Rev. Sts. *c.* 83, §§ 43, 44.

The result is the same when she seeks to avail herself of the provisions of the Rev. Sts. *c.* 83, § 39, which authorize this court to allow a party, aggrieved by a decision of the judge of probate, and who shall have omitted from any cause, without default on his part, to claim or prosecute the appeal within the time prescribed by law, upon reasonable terms to enter and prosecute it, with the same effect as if it had been done seasonably. The appeal may be entered with the same effect as if done seasonably, and no other or greater.   The statute does not authorize the entry of an appeal, when the decree of the court below has been executed.   By the reception of the amount allowed by the decree, the petitioner has assented to it, and waived all right of appeal.

After the first allowance of $300 had been made, in July

1852 she applied for an additional allowance. The administrator had in the mean time proceeded with the settlement of the estate. The personal property, not required for the payment of the allowance of $300 to the widow, was exhausted in the payment of debts. There was then no fund out of which a further allowance could be made. The administrator could not recall the money from the pockets of the creditors to pay such further allowance. He could not be compelled to pay it from his own pocket. He could not pay it from the proceeds of the sale of real estate; for under the provision of the Rev. Sts. *c.* 71, § 34, any surplus of such proceeds in his hands, after payment of debts, must be treated as real estate, and disposed of among the same persons and in the same proportions, as the real estate would have been, if it had not been sold.

A question was made in the argument, whether the administrator had a right to sell the personal property and pay the debts before the year had expired. But of this, when the estate is solvent, there can be no doubt. In relation to the right to sell the personal property, the provisions of the Rev. Sts. *c.* 67, §§ 1, 2, 3, are quite conclusive. Nor can there be any serious question as to his right to pay the debts. He is not liable, indeed, to the suit of any creditor, brought within one year after giving bond for the discharge of his trust, unless for the recovery of a demand that would not be affected by the insolvency of the estate, or brought, after the estate has been represented insolvent, for the purpose of ascertaining a contested claim. Rev. Sts. *c.* 66, § 10. And upon the expiration of the year, not having had notice of demands which would authorize him to represent the estate insolvent, he may pay the debts due from the estate, without becoming liable to any creditor in consequence of such payments, made before notice of his demand, though the remaining estate should be insufficient to satisfy such creditor. Rev. Sts. *c.* 66, § 11. But he is to render his first account of administration within one year after giving bond, Rev. Sts. *c.* 67, § 7; and there is nothing in the terms of the statutes to prevent him from proceeding to pay the debts within the year, if he choose to assume the risk of the solvency of the

estate. A construction, so limiting the powers of the admin·
istrator, would not be supported by the language of the statutes,
would be against the established usage of the courts of probate,
and would create unnecessary delay in the settlement of estates
and the payment of debts, when the estates are perfectly solvent,
and the parties interested desirous of an early settlement.

*Decree of judge of probate, making second allowance, reversed;
and petition of widow, for leave to appeal from first allowance.
dismissed.*